LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

HECTOR MORA,
VICTORINO GALLARDO,
RAUL REYES,
ADAN HERNANDEZ-RIVEROS,
EDY HERNANDEZ, and
NEPTALI AGUERO
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class,*                                      Case No.: 16-cv-4373 (FB)(RML)

                          Plaintiffs,                 **FIRST AMENDED**
                                                      **CLASS AND COLLECTIVE**
                                                      **ACTION COMPLAINT**

                          v.                          Jury Trial Demanded

BAREBURGER GROUP LLC,
BAREBURGER, INC,
NGM MANAGEMENT GROUP LLC
        d/b/a BAREBURGER,
COLUMBUS VILLAGE LLC
        d/b/a BAREBURGER,
BARE BURGER DIO INC.
        d/b/a BAREBURGER,
FIDI DISTRICT LLC
        d/b/a BAREBURGER,
EAST SIDE BURGERS, LLC
        d/b/a BAREBURGER,
JOHN DOE CORPORATIONS 1-15
        d/b/a BAREBURGER,
EURIPIDES PELEKANOS,
GEORGE RODAS,
GEORGE HADJIPANAYI,
MICHAEL PITSINOS,

1

EFTYCHIOS PELEKANOS,
GEORGIOS DELLIS
GEORGIOS TZANIDAKIS and
JOHN DOES 1-15,

        Defendants.

Plaintiffs, HECTOR MORA, VICTORINO GALLARDO, RAUL REYES, ADAN HERNANDEZ-RIVEROS, EDY HERNANDEZ and NEPTALI AGUERO (herein, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this first amended class and collective action Complaint against Defendants, BAREBURGER, INC., BAREBURGER GROUP LLC (together the "Franchisor Corporate Defendants"), NGM MANAGEMENT GROUP LLC d/b/a BAREBURGER, BARE BURGER DIO INC. d/b/a BAREBURGER, COLUMBUS VILLAGE LLC d/b/a BAREBURGER, FIDI DISTRICT LLC d/b/a BAREBURGER, EAST SIDE BURGERS, LLC d/b/a BAREBURGER and JOHN DOE CORPORATIONS 1-15 d/b/a BAREBURGER (together the "Franchisee Corporate Defendants," and collectively with the Franchisor Corporate Defendants, the "Corporate Defendants"), EURIPIDES PELEKANOS and GEORGE RODAS (together the "Franchisor Individual Defendants"), GEORGIOS DELLIS, EFTYCHIOS PELEKANOS, MICHAEL PITSINOS, GEORGE HADJIPANAYI, GEORGIOS TZANIDAKIS and JOHN DOES 1-15, (together the "Franchisee Individual Defendants" and collectively with the Franchisor Individual Defendants, the "Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and state as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid overtime, (2)

unpaid minimum wages, (3) illegally retained gratuities due to Defendants' illegal tip-pooling scheme, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid minimum wages, (3) unpaid spread of hours premium, (4) illegally retained gratuities due to Defendants' illegal tip-pooling scheme, (5) improper meal credit deductions, (6) costs of tools of trade and maintenance, (7) statutory penalties, (8) liquidated damages, and (9) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff, HECTOR MORA, is a resident of Bronx County, New York.

6.      Plaintiff, VICTORINO GALLARDO, is a resident of Bronx County, New York.

7.      Plaintiff, RAUL REYES, is a resident of Bronx County, New York.

8.      Plaintiff, ADAN HERNANDEZ-RIVEROS, is a resident of Kings County, New York.

*The Bareburger Franchise:*

9.      Defendant EURIPIDES PELEKANOS and his fellow Co-Founders opened the first "Bareburger" restaurant in 2009 in Astoria, Queens, New York. Defendants opened their second Bareburger in September 2010. Beginning in 2011, Defendants began franchising the brand and opened up their third Bareburger restaurant. There are currently twenty-one (21) Bareburger

restaurants in New York State. The corporate headquarter is located at 31-29 Vernon Boulevard, Long Island City, New York 11106. Defendant EURIPIDES PELEKANOS, as Chief Executive Officer of Bareburger Group LLC, is charged with the expansion of the franchise and the selection process of new franchisees. Franchisor Defendants maintain significant operational control in all of the Bareburger locations.

10. *The Franchisor Corporate Defendants:*

(a) Corporate Defendant BAREBURGER GROUP LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 31-29 Vernon Boulevard, Long Island City, New York 11106.

(b) Corporate Defendant BAREBURGER, INC. is a domestic business corporation organized under the laws of the State of New York, with a principal executive office and an address for service of process located at 31-23 VERNON BLVD, ASTORIA, NEW YORK 11106. GEORGE RODAS is the Chief Executive Officer of BAREBURGER, INC.

11. *The Franchisor Individual Defendants:*

(a) Individual Defendant EURIPIDES PELEKANOS is the Owner and Chief Executive Officer of Corporate Defendant BAREBURGER GROUP LLC, and he is a Co-Founder of the Bareburger brand. Defendant EURIPIDES PELEKANOS has ownership interest in several of the Bareburger locations.

(b) Individual Defendant GEORGE RODAS is the Chief Executive Officer of Franchisor Corporate Defendant BAREBURGER, INC. and Franchisee Corporate Defendant BARE BURGER DIO INC. GEORGE RODAS is also an executive officer of Franchisor Corporate

4

Defendant BAREBURGER GROUP LLC. Defendant GEORGE RODAS has ownership interest in several of the Bareburger locations.

12.     Franchisor Individual Defendants require all Franchisee Individual Defendants to attend thirty-five to fifty days of their manager and brand training program. In addition, they provide two to three weeks of on-site training to ensure that their standards for their Bareburger franchise is met.

13.     Each of the Franchisor Individual Defendants exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class by creating, amending and implementing management and operation policies and practices that are to be followed in all of the Bareburger locations, including company-owned locations and franchisee locations. Along with the franchisee owners of individual Bareburger locations, each of the Franchisor Individual Defendants exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class at the Bareburger locations, including company-owned locations and franchisee locations.

14.     Each of the Franchisor Individual Defendants additionally has the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and the Class. Each of them exercises functional control over the business and financial operations of the Bareburger locations, including company-owned locations and franchisee locations. They each ensure that managers and employees are properly trained, that the quality of the

food at each location meet their standards, and that employees effectively serve and cater to customers to ensure that each of the Bareburger locations is operating efficiently and profitably.

15.    Each of the Franchisor Individual Defendants makes regular announced and unannounced visits to each of the Bareburger locations. They each possess and exercise the authority to make changes in the policies and practices at each Bareburger location to ensure that the franchisor's standards and policies are being followed. Employees could complain to each of the Franchisor Individual Defendants directly regarding any of the terms of their employment, and they each would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. Plaintiffs have observed Franchisor Individual Defendants regularly at the "8th Avenue" Bareburger location, located at 153 Eighth Avenue, New York, New York 10011, attending meetings with management and Individual Defendants MICHAEL PITSINOS and GEORGE HADJIPANAYI. Franchisor Individual Defendants are able to and have implemented company-wide policies regarding employees and their working schedule, whether for inclement weather purposes or otherwise. *See* EXHIBIT A (an internal email sent by CEO and Founder, Franchisor Individual Defendant EURIPIDES PELEKANOS was posted on Bareburger's public Facebook webpage on February 17, 2017, and announced a company-wide policy to support employees' choice to not come to work if they so choose to do so).

16.    ***The Franchisee Corporate Defendants:***

(a) Corporate Defendant NGM MANAGEMENT GROUP LLC d/b/a BAREBURGER is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 153 8TH AVENUE,

NEW YORK, NEW YORK, 10011. MICHAEL PITSINOS and GEORGE HADJIPANAYI are each principals of NGM MANAGEMENT GROUP LLC.

(b) Corporate Defendant BARE BURGER DIO INC. d/b/a BAREBURGER is a domestic business corporation organized under the laws of the State of New York, with a principal executive office located at 31-29 VERNON BLVD, LONG ISLAND CITY, NEW YORK 11106 and an address for service of process located at 535 LAGUARDIA PLACE, NEW YORK, NEW YORK, 10012. The principal executive office address for Corporate Defendant BARE BURGER DIO INC. d/b/a BAREBURGER is the same as the principal place of business for Corporate Defendant BAREBURGER GROUP LLC. GEORGE RODAS is the Chief Executive Officer of BARE BURGER DIO INC. d/b/a BAREBURGER. GEORGIOS DELLIS and EFTHYCHIOS PELEKANOS are each principals of BARE BURGER DIO INC. d/b/a BAREBURGER.

(c) Corporate Defendant COLUMBUS VILLAGE LLC d/b/a BAREBURGER is a domestic limited liability company with a principal place of business located at 795 COLUMBUS AVENUE, NEW YORK, NEW YORK 10025 and an address for service of process located at 153 8TH AVENUE, NEW YORK, NEW YORK 10011, which is the same address as the principal place of business for Corporate Defendant NGM MANAGEMENT GROUP LLC d/b/a BAREBURGER. GEORGE HADJIPANAYI and MICHAEL PITSINOS are each principals of COLUMBUS VILLAGE LLC d/b/a BAREBURGER.

(d) Corporate Defendant FIDI DISTRICT LLC d/b/a BAREBURGER is a domestic limited liability company with a principal place of business located at 155 WILLIAM STREET, NEW YORK, NEW YORK 10038 and an address for service of process located at 21-03 44TH AVENUE, LONG ISLAND CITY, NEW YORK 11101. GEORGE HADJIPANAYI and MICHAEL PITSINOS are each principals of FIDI DISTRICT LLC d/b/a BAREBURGER.

(e) Corporate Defendant EAST SIDE BURGERS, LLC d/b/a BAREBURGER is a domestic limited liability company with a principal place of business located at 1370 FIRST AVENUE, NEW YORK, NEW YORK 10021 and an address for service of process located at c/o Kapsalis Associates, P.C., 12-52 CLINTONVILLE STREET, SUITE 200, WHITESTONE, NEW YORK 11357. GEORGIOS TZANIDAKIS is a principal of EAST SIDE BURGERS d/b/a BAREBURGER.

(f) Corporate Defendants, JOHN DOE CORPORATIONS 1-15 d/b/a BAREBURGER, are various business corporations doing business as Bareburger franchise locations throughout New York State, which employ FLSA Collective Plaintiffs and Class Members under a common wage and hour policy. Franchisee Individual Defendants, JOHN DOES 1-15, are the franchisee owners of JOHN DOE CORPORATIONS 1-15.

***Franchisee Individual Defendants:***

17. Each of Franchisee Individual Defendants, EURIPIDES PELEKANOS, GEORGE RODAS, GEORGIOS DELLIS, EFTYCHIOS PELEKANOS, MICHAEL PITSINOS, GEORGE HADJIPANAYI, GEORGIOS TZANIDAKIS and JOHN DOES 1-15, had operational control of each of their respective Bareburger Restaurants. Each of them exercised control over the terms and conditions of the employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. Each of them had the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. Each of them had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members.

*Franchisor and Franchisee Defendants are Joint Employers:*

18.   Defendants operate a chain of restaurants (herein, collectively "Bareburger") under the trade name "Bareburger." Courts in the Second Circuit routinely find employers of one establishment, including those in chains and franchises, jointly liable for wage and hour violations at other establishments if the separate establishments operate as a single integrated enterprise, where restaurants are engaged in related activities, share common control and have a common business purpose. In *Lin v. Benihana National Corp.*, plaintiffs worked at the same "Benihana" franchise location but the Court did not dismiss the other franchisor defendants or franchisee defendants even though they did not directly employ plaintiffs, permitting plaintiffs to move for class certification to recover unpaid wages upon a showing of single integrated enterprise. No. 10 Civ. 1335 (S.D.N.Y. 2010). In *Garcia v. Chipotle Mexican Grill, Inc.*, plaintiff worked at five Chipotle locations in New York City and the Court granted city-wide collective certification upon a showing of a common policy that violated the law. No. 16 Civ. 601 (S.D.N.Y., Nov. 4, 2016).

19.   Here, each franchise restaurant operates as a single integrated enterprise. The Bareburger restaurants are engaged in related activities through their joint advertising on the Bareburger website, located at https://bareburger.com and their Facebook website, located at https://www.facebook.com/bareburger. In addition, they provide mutually supportive services to the advantage of each franchise location by maintaining a joint delivery service through the main Bareburger website, which allows customers to order the same items from any Bareburger location. The Bareburger restaurants are commonly owned through the concerted control of the franchisors. Franchisor Individual Defendant EURIPIDES PELEKANOS is associated with almost every location on their website as the "Chief Bear." Moreover, the Bareburger restaurants

exert common control through their centralized career opportunity website, located at https://bareburger.companycareersite.com/. Lastly, the Bareburger restaurants serve a common business purpose and are engaged in the same business activities of serving organic burgers to customers and patrons. The Bareburger restaurants also operate under the same trade name, the same logo, and with the same menu. Employees and food items are also freely transferable among the various Bareburger locations.

20.   At all times relevant to this lawsuit, Plaintiffs, FLSA Collective Plaintiffs and Class members were jointly employed by the Franchisor Defendants and their respective Franchisee Defendants. Such restaurant enterprise includes the following restaurants operating at the following locations:

251 East 52nd Street, New York, New York 10022

399 South Oyster Bay Road, Plainview, New York 11803

235 Merrick Road, Nassau, New York 11570

71-49 Austin Street, Forest Hills, New York 11375

265 N Central Avenue, Hartsdale, New York 10530

32 Middle Neck Road, Great Neck, New York 11021

153 8th Avenue, New York, New York 10011

535 LaGuardia Place, New York, New York 10012

155 Williams Street, New York, New York 10038

1370 First Avenue, New York, New York 10021

1681 First Avenue, New York, New York 10128

4819 Vernon Boulevard, Long Island City, New York 11101

149 Court Street, Brooklyn, New York 11201

795 Columbus Avenue, New York, New York 10025

170 7th Avenue, Brooklyn, New York 11215

23-01 31st Street, Astoria, New York 11105

313 West 57th Street, New York, New York 10019

33-21 31st Avenue, Astoria, New York 11106

42-38 Bell Boulevard, Bayside, New York 11361

42 Main Street, Port Washington, New York 11050

21.   Defendants are joint employers, as they are employers within the meaning of the common law and they share and codetermine matters governing the essential terms and conditions of employment, including hiring, firing, directing and supervising. Each of the Defendants acted directly and indirectly in the interest of one another in relation to the Plaintiffs, FLSA Collective Plaintiffs, and the Class. Merchandise and employees are also shared and interchangeable between Bareburger restaurants.

22.   The Defendants were not completely dissociated from one another with respect to the Plaintiffs' employment. Employment opportunities are jointly advertised on the main Bareburger website, and applicants can apply to work for any of the New York State Bareburger Restaurants online at https://bareburger.companycareersite.com/. Defendants also share the franchise's public Facebook website at https://www.facebook.com/Bareburger/, which announces to the public the opening and closing of all locations, regardless of whether it is a franchisor or franchisee location. *See* EXHIBIT B (snapshots of Facebook posts that announce the various opening or closing of certain locations during inclement weather in the Northeast). Also, as mentioned above, Franchisor Individual Defendants may issue company-wide policies on employment attendance and Franchisee Defendants are required to abide by the company-wide policy. *See*

EXHIBIT A (Individual Defendant EURIPIDES PELEKANOS sent an internal email announcing that while Bareburger locations cannot "afford to close on Thursday," due to locations being closed the prior week due to inclement weather, "who ever chooses to protest and not come to work on Thursday, we support your voice. We will welcome you back on Friday").

23.   Through their use of tools and resources, the Franchisor Defendants engage in sufficient control over each franchisee's general business operations, beyond the protection of the brand. Franchisor Defendants promulgate and implement management and operation policies and practices at all of the franchise locations.

24.   At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

25.   At all relevant times, the work performed by Plaintiffs was directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.   Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees employed by Defendants, (including delivery persons, waiters, runners, bussers, porters, cooks, line-cooks, food preparers and dishwashers), on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

27.   At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper minimum wage and the proper overtime premiums at the rate of one and one

half times the regular rate for work in excess of forty (40) hours per workweek. Plaintiffs and FLSA Collective Plaintiffs claim that Defendants willfully violated their rights by failing to pay them their proper minimum wages and overtime premiums in the lawful amount for all hours worked. Defendants paid Plaintiffs and a subclass of tipped employees at the invalid "tip credit" minimum wage, which was less than the federal minimum wage. Defendants, however, were not entitled to take any tip credits under the FLSA because, with respect to Plaintiffs and other tipped employees, Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) failed to inform that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by the tipped employees, (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement, (iv) failed to inform that tip credit will not apply unless tipped employees have been informed of the foregoing tip credit notice requirement, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, and (vi) failed to meet other statutory requirements for claiming a valid tip credit under the FLSA. Moreover, Plaintiffs and a subclass of tipped employees claim that Defendants illegally retained gratuities from deliveries for catering events and Defendants implemented an invalid tip pooling scheme in which Plaintiffs and a subclass of the FLSA Collective Plaintiffs did not agree to. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

28.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be

provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

29.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees employed by Defendants, (including delivery persons, waiters, runners, bussers, porters, cooks, line-cooks, food preparers and dishwashers), employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

30.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

31.    The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of waiters, bussers, delivery persons and runners ("Tipped Subclass") who also number more than forty (40). Plaintiffs MORA, GALLARDO, REYES and HERNANDEZ-RIVERIOS are members of both the Class and the Tipped Subclass.

32.   Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime premiums for hours worked in excess of forty (40) in a workweek, (ii) failing to pay spread of hours premium, (iii) improperly claiming a meal credit allowance, (iv) failing to provide Class members with proper wage statements with every payment of wages, and (v) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law. With respect to the Tipped Subclass, Defendants were not entitled to claim any tip credit under the New York Labor Law. The Tipped Subclass suffered from Defendants' failure to pay minimum wage due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which Defendants retained tips in which Plaintiffs and Tipped Subclass members did not agree to, (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof. Plaintiffs and members of the Tipped Subclass further claim that Defendants illegally retained gratuities from deliveries for catering events. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

33.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

34.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

35.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

36.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b.     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c.     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d.     Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e.     Whether Defendants properly provided notice to the Tipped Subclass that Defendants were taking a tip credit;

f.     Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

17

g.   Whether Defendants caused the Tipped Subclass to engage in non-tipped duties exceeding 20% of each workweek;

h.   Whether Defendants took proper amount of tip credit allowance for each payment period under the New York Labor Law;

i.   Whether Defendants retained a portion of the service charge for their corporate catering services, while representing or allowing their customers to believe that the charges were gratuities for their tipped employees;

j.   Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, their proper overtime rate of compensation and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

k.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law;

l.   Whether Defendants established an invalid tip pooling arrangement by illegally retaining Plaintiffs and the Tipped Subclass members' tips from catered event customers;

m.   Whether Defendants established an invalid  tip pooling arrangement by instituting an invalid tip pooling scheme in which Plaintiffs and the Tipped Subclass members' did not agree to;

n.   Whether Defendants paid Plaintiffs and Class members the federal and state minimum wage for all hours worked;

o.   Whether Defendants properly compensated Plaintiffs and Class members for overtime under state and federal law;

p.   Whether Defendants paid Plaintiffs and Class members the New York State spread of hours premium when their workdays exceeded ten (10) hours;

q.   Whether Defendants paid Plaintiffs and the Tipped Subclass for tools of trade and maintenance costs; and

r.   Whether Defendants claimed an invalid meal credit.

### STATEMENT OF FACTS

37.   Plaintiff, HECTOR MORA:

(a) In or about February 2015, Plaintiff HECTOR MORA was hired by Defendants to work as a delivery person for Defendants at the "8th Avenue" Bareburger location at 153 8th Avenue, New York, New York 10011.

(b) Plaintiff HECTOR MORA was employed by Defendants until on or about November 30, 2015.

(c) During the employment of Plaintiff HECTOR MORA by Defendants, he was regularly scheduled to work up to forty-eight (48) hours per week and had a regular work schedule as follows: Mondays and Tuesdays from 11a.m. to 5p.m. and Wednesdays, Thursdays and Fridays from 11a.m. to 11p.m. Occasionally, Plaintiff MORA worked only two to three times a workweek. Plaintiff HECTOR MORA regularly worked without any lunch break on a daily basis. Plaintiff HECTOR MORA was paid below the federal and New York State minimum wage. During his entire employment, Plaintiff MORA was paid at a base hourly rate of $5.65 for all hours worked up to forty (40) hours a week and an overtime hourly rate between

$10.02 and $12.37 for all hours worked over forty (40) hours per week. At all times, Plaintiff MORA was a tipped employee.

(d) Throughout his employment, Plaintiff HECTOR MORA was sent at least three times per week to deliver, pick up, and transfer supplies and ingredients to and from other Bareburger locations, including the "LaGuardia" Bareburger located at 535 LaGuardia Place, New York, New York 10012; the "Fulton" Bareburger located at 155 William Street; and the "96th Street" Bareburger located at 795 Columbus Avenue, New York, New York 10025.

38.   Plaintiff, VICTORINO GALLARDO:

(a) On or about June 2013, Plaintiff VICTORINO GALLARDO was hired by Defendants to work as a delivery person for Defendants at the "8th Avenue" Bareburger location. Plaintiff GALLARDO worked for Defendants until around June 2014. In or about March 2015, Plaintiff GALLARDO was again hired by Defendants to work as a delivery person for Defendants at the "8th Avenue" Bareburger location. In or about June 2015, Plaintiff GALLARDO was transferred to the "96th Street" Bareburger location, where he has remained for the rest of his employment. Plaintiff GALLARDO is currently employed by Defendants.

(b) From about June 2013 until about or around June 2014, Plaintiff GALLARDO regularly worked a total of eighty-one (81) hours per week and had a regular weekly work schedule as follows: 11:00 a.m. to 12:30a.m. for six (6) days per week.

(c) From about March 2015 until about or around November 2015, Plaintiff GALLARDO regularly worked a total of forty-five (45) hours per week and had a regular weekly work schedule as follows: 12p.m. to 9p.m. for five (5) days per week.

(d) From about November 2015, Plaintiff GALLARDO regularly worked a total of twenty-five (25) hours per week and had a regular weekly work schedule as follows: 5p.m. to 10p.m. for five (5) days per week.

(e) Plaintiff VICTORINO GALLARDO regularly worked without any lunch break on a daily basis.

(f) During his entire employment, Plaintiff GALLARDO was paid below the Federal and New York State minimum wage. Specifically, Plaintiff GALLARDO was paid at a base hourly rate of $5.65 for all hours worked up to forty (40) hours a week and an overtime hourly rate of $10.02 for all hours worked over forty (40) per week. At all times, Plaintiff GALLARDO was a tipped employee.

(g) From in or around June 2013 until around June 2014, when Plaintiff GALLARDO did not have deliveries, he was required to clean the kitchen, to clean the grill, to clean the walls of the restaurant, and to sweep and mop.

(h) Throughout his employment, on a daily basis, Plaintiff GALLARDO was required to take out the garbage and to assist in the dishwashing. Throughout his employment, for several times a week, Plaintiff GALLARDO was also required to deliver, pick up, and transfer supplies and ingredients to and from other Bareburger locations, including the "LaGuardia" Bareburger located at 535 LaGuardia Place, New York, New York 10012; the "Fulton" Bareburger located at 155 William Street; the "96th Street" Bareburger located at 795 Columbus Avenue, New York, New York 10025; and the "8th Avenue" Bareburger located at 153 8th Avenue, New York, New York 10011.

39.    Plaintiff, RAUL REYES:

(a) In or about February 2015, Plaintiff REYES was hired by Defendants to work as a delivery person for Defendants at the "8th Avenue" Bareburger location.  Plaintiff REYES was employed by Defendants until on or about November 23, 2015.

(b) From about February 2015 until about or around August 2015, Plaintiff REYES regularly worked a total of sixty (60) hours per week and had a regular weekly work schedule as follows: 11a.m. to 11p.m. for five (5) days per week. From about August 2015 until on or about November 23, 2015, Plaintiff REYES regularly worked a total of thirty-six (36) hours per week and had a regular weekly work schedule as follows: 11a.m. to 11p.m. for three (3) days per week.

(c) During his entire employment, Plaintiff REYES was paid a base hourly rate of $5.65 for all hours worked up to forty (40) per week, and an hourly rate of $10.03 for all hours worked over 40 per week.  At all times, Plaintiff REYES was a tipped employee.

40.    Plaintiff ADAN HERNANDEZ-RIVEROS:

(a) In or about February 2015, Plaintiff ADAN HERNANDEZ-RIVEROS was hired by Defendants to work as a delivery person for Defendants at the "8th Avenue" Bareburger location. Plaintiff was employed by Defendants until on or about December 16, 2015.

(b) Plaintiff HERNANDEZ-RIVEROS regularly worked a total of thirty (30) hours per week and had a regular weekly work schedule as follows: 5p.m. to 11p.m. for five (5) days a week.

(c) During his entire employment, Plaintiff HERNANDEZ-RIVEROS was paid below the Federal and New York State minimum wage. Specifically, Plaintiff HERNANDEZ-

RIVEROS was paid at a base hourly rate of $5.65 for all hours worked. At all times, Plaintiff HERNANDEZ-RIVEROS was a tipped employee.

41.    Plaintiff EDY HERNANDEZ:

(a) In or around March 2011, Plaintiff EDY HERNANDEZ was hired by Defendants to work as a cook for Defendants at the Bareburger located at 1370 First Avenue, New York, New York 10021. Plaintiff was employed by Defendants until around November 2016. Throughout his employment with Defendants, Defendants frequently asked Plaintiff EDY HERNANDEZ to temporarily work at the Bareburger located at 1681 First Avenue, New York, New York 10128 when they are short-staffed.

(b) From the start of Plaintiff EDY HERNANDEZ's employment with Defendants through the end of December 2015, Plaintiff EDY HERNANDEZ regularly worked a total of seventy-two (72) hours per week as follows, from 10a.m. to 10p.m. for six (6) days a week. Throughout this employment period, Plaintiff EDY HERNANDEZ was occasionally required to work a seventh day for an additional twelve (12) hours. Throughout this time period, Plaintiff EDY HERNANDEZ regularly worked without any lunch break on a daily basis. From in or around January 2016 until the end of Plaintiff EDY HERNANDEZ's employment with Defendants, Plaintiff regularly worked from 5:30p.m. to 10:30p.m. for four (4) days a week, for a total of twenty (20) hours per week.

(c) From the start of Plaintiff EDY HERNANDEZ's employment with Defendants through the end of December 2015, Plaintiff EDY HERNANDEZ was compensated on a straight-time basis at a rate of $10.00 per hour for all hours worked in cash. From in or around January 2016, Plaintiff EDY HERNANDEZ was compensated at a rate of $13.00 per hour for all hours worked by check.

42.  Plaintiff NEPTALI AGUERO:

(a) In or around March 2011, Plaintiff NEPTALI AGUERO was hired by Defendants to work as a cook for Defendants at the Bareburger located at 1370 First Avenue, New York, New York 10021. Plaintiff was employed by Defendants until in or around November 2016. Throughout his employment with Defendants, Defendants frequently asked Plaintiff NEPTALI AGUERO to temporarily work at the Bareburger located at 1681 First Avenue, New York, New York 10128 when they are short-staffed.

(b) From the start of Plaintiff NEPTALI AGUERO's employment with Defendants through the end of December 2015, Plaintiff NEPTALI AGUERO regularly worked a total of seventy-two (72) hours per week as follows, from 10a.m. to 10p.m. for six (6) days a week. Throughout this employment period, Plaintiff NEPTALI AGUERO was occasionally required to work a seventh day for an additional twelve (12) hours. Throughout this time period, Plaintiff NEPTALI AGUERO regularly worked without any lunch break on a daily basis. From in or around January 2016 until the end of Plaintiff NEPTALI AGUERO's employment with Defendants, Plaintiff regularly worked from 10a.m. to 4p.m. for six (6) days a week, for a total of thirty-six (36) hours per week.

(c) From the start of Plaintiff NEPTALI AGUERO's employment with Defendants through the end of December 2015, Plaintiff NEPTALI AGUERO was compensated on a straight-time basis at a rate of $10.00 per hour for all hours worked in cash. From in or around January 2016, Plaintiff NEPTALI AGUERO was compensated by check at a rate of $11.00 per hour for all hours worked.

43.  Defendants required Plaintiffs and the Tipped Subclass to purchase tools of trade (a bicycle) and to pay for maintenance and repairs. On average, Plaintiffs and the Tipped Subclass

who were delivery persons spent between approximately $400 to $1000 for the purchase of their vehicle and they spent approximately $100 per month for maintenance and repair. However, Defendants did not pay them for either the cost of tools of trade or the maintenance/repair fees.

44.    Plaintiffs, FLSA Collective Plaintiffs and Class members were not paid at the overtime premium rate of time and one half of regular hourly rate for each hour exceeding forty (40) hours per workweek. With respect to Plaintiffs EDY HERNANDEZ and AGUERO, and those similarly situated, back of the house employees were not paid their overtime premium rate because they were paid on a straight-time basis for the relevant statutory period until in or around January 2016.

45.    Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the statutory minimum wage and overtime rate because Defendants claimed an invalid tip credit for all hours worked, including those over forty (40) in a workweek. Defendants paid them at the invalid "tip credit" minimum wage of $5.65 per hour and at an invalid overtime rate of $10.02, which is less than the Federal and New York State minimum wages. With respect to Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to take any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20%

25

of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) illegally retained gratuities, (vii) implemented an invalid tip pooling because Defendants shared in the tips, (viii) failed to accurately track daily tips earned or maintain records thereof, (ix) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (x) failed to provide a proper wage statement with every payment of wages informing Plaintiffs and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

46.    Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were required to engage more than 20% of their working time in non-tipped related activities, including cleaning the restaurant, stocking supplies, taking inventory, and transferring ingredients and supplies between Bareburger locations. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by the tipped employees.

47.    Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass suffered from Defendants' retention of gratuities. For corporate catering events, Defendants charged a "service charge." However, at all relevant times, whether such charge was a gratuity was unclear to the customers, allowing the customers to believe that the charge was a gratuity for the tipped employees. At all relevant times, Defendants failed to provide adequate notification to private-event customers that the charges were for administration, were not purported to be a gratuity and would not be distributed as gratuities to employees. On regular deliveries from Bareburger locations, Defendants established an invalid tip pooling policy by instituting a scheme in which Defendants designated a tip pooling allocation where they deducted 10% from tips earned by

delivery persons through deliveries to give to other non-tipped employees. Such improper tip pooling policy invalidates Defendants' tip credit allowance.

48.     Defendants unlawfully failed to pay Plaintiffs and Class members the spread-of-hours premium for workdays that exceeded ten hours in length.

49.     Defendants improperly claimed a meal credit in violation of the New York Labor Law. Defendants claimed a meal credit that exceeded the regulatory requirements under the New York Labor Law. Plaintiffs and Class members were frequently unable to eat because they did not have free and clear meal breaks. Defendants also claimed a meal credit on wage statements even though no meals were provided for Plaintiffs and Class members.

50.     Defendants failed to properly provide Plaintiffs and the Class members with proper wage notices at hiring and annually thereafter. Plaintiffs did not receive any wage notice either upon being hired or annually since the date of hiring, or they received a wage and tip notice, but it was not in statutory compliance with the New York Labor Law.

51.     Plaintiffs MORA, GALLARDO, REYES and HERNANDEZ-RIVERIOS and the Tipped Subclass received wage statements that were not in compliance with the New York Labor Law. Defendants were required to provide itemized listings of deductions taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not clearly include tip credit allowance for each payment period. Moreover, Defendants provided wage statements that failed to clearly provide, among others, Defendants' phone number. With respect to Plaintiffs EDY HERNANDEZ and AGUERO, prior to January 2016, back of the house employees did not receive wage statements and were paid entirely in cash.

52.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to Plaintiffs, FLSA Collective Plaintiffs and Class members.

53.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass due to the invalid tip credit that Defendants claimed.

54.    Defendants knowingly and willfully operated their business with a policy of not paying spread-of-hours premium to Plaintiffs, FLSA Collective Plaintiffs and Class members, in violation of the NYLL.

55.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

56.    Defendants failed to provide proper wage notices to employees, including rate of overtime compensation, among others, at the beginning of employment and annually thereafter pursuant to the requirements of the New York Labor Law.

57.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

58.    Plaintiffs reallege and reaver Paragraphs 1 through 57 of this First Amended Class and Collective Action Complaint as fully set forth herein.

59.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

60.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

61.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

62.    At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek.

63.    Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

64.    Defendants willfully violated rights of Plaintiffs and a subclass of FLSA Collective Plaintiffs by failing to pay them minimum wages in the lawful amount for hours worked. Defendants, were not entitled to take any tip credits under the FLSA because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) failed to inform that the tip credit claimed by Defendants could not exceed the amount of tips actually received by the tipped employees, (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement, (iv) failed to inform that tip credit would not apply unless tipped employees have been informed of the foregoing tip credit notice requirement, (v) claimed tip credit for all hours worked despite having caused tipped employees

to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (vi) implemented an invalid tip pooling in which Defendants illegally retained gratuities, (vii) implemented an illegal tip-pooling scheme in which management determined the tip pooling allocation which was not agreed to by tipped employees, and (viii) failed to meet other statutory requirements for taking a valid tip credit under the FLSA.

65.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

66.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs at the statutory minimum wage and overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

67.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

68.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

69.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid

minimum wages and unpaid overtime wages, plus an equal amount as liquidated damages.

70.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

71.     Plaintiffs reallege and reaver Paragraphs 1 through 70 of this First Amended Class and Collective Action Complaint as if fully set forth herein.

72.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

73.     Defendants willfully violated the rights of Plaintiffs and Class members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

74.     Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

75.     Defendants willfully violated the rights of Plaintiffs and the Tipped Subclass by failing to pay them minimum wages in the lawful amount for hours worked. Defendants were not entitled to take any tip credits under the NYLL, because they (i) failed to properly provide notice to all tipped employees, at date of hiring and annually thereafter, that Defendants were taking a tip credit, (ii) implemented an invalid tip pooling scheme in which Defendants shared in the tips, (iii) implemented an invalid tip pooling scheme in which Plaintiffs and Class members' did not agree to, (iv) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (v) failed to provide a proper wage statement with every payment of wages informing tipped

employees of the amount of tip credit taken for each payment period, and (vi) failed to accurately keep track of tips earned and maintain records thereof.

76.    Plaintiffs' and Class members' regularly worked days that exceeded ten hours per day. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay spread of hours premium to Plaintiffs and Class members for each day their workday exceeded ten (10) hours.

77.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants either failed to provide wage statements in its entirety or Defendants failed to satisfy the wage statement requirements under the NYLL because tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Moreover, Defendants failed to provide wage statements that satisfied statutory requirements under the NYLL because the wage statements were missing Defendants' telephone phone numbers and because Defendants failed to disclose the proper overtime rate of pay and overtime hours worked.

78.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

79.    Defendants willfully violated Plaintiffs and Class members' rights by failing to pay compensation for tools of trade and maintenance/repair costs as required under the New York Labor Law.

80.    Defendants willfully violated the rights of Plaintiffs and Class members by improperly claiming a meal credit. Defendants' meal credit was invalid because Defendants

failed to provide the requisite time in which to eat, Defendants claimed meal credit for meals that were not provided, and the meal credit claimed exceeded regulatory requirements, in violation of the NYLL requirements.

81.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid overtime, unpaid minimum wage, unpaid spread of hours premium, unpaid tools of trade and maintenance/repair costs, improper deductions of meal credit, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

d.   An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

e.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to 29 U.S.C. § 216;

f.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to the New York Labor Law;

g.   An award of unpaid spread of hours premium due under the New York Labor Law;

h.   An award equal to the amount of the improperly retained tips withheld by Defendants;

i.   An award of unpaid tools of trade and maintenance/repair costs and improper meal credit deductions due under the New York Labor Law;

j.   An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

l.   Designation of this action as a class action pursuant to F.R.C.P. 23;

m.   Designation of Plaintiffs as Representatives of the Class; and

n.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated: February 28, 2017

                        Respectfully submitted,

By:    */s/ C.K. Lee*
         C.K. Lee, Esq.

         LEE LITIGATION GROUP, PLLC
         C.K. Lee (CL 4086)
         Anne Seelig (AS 3976)
         30 East 39th Street, Second Floor
         New York, NY 10016
         Tel.: 212-465-1188
         Fax: 212-465-1181
         *Attorneys for Plaintiffs, FLSA Collective*
         *Plaintiffs and the Class*