**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HECTOR MORA, *et al.*,
*on behalf of themselves, FLSA Collective Plaintiffs,*
*and Class Members,*

**Plaintiffs,**

- **against -**

BAREBURGER GROUP LLC, *et al.*,

**Defendants.**

**Case No.:** 16-cv-4373 (RML)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO ENFORCE THE SETTLEMENT AGREED UPON BY THE PARTIES**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs, and Class Members*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………ii

PRELIMINARY STATEMENT………………………………………………………...1

BACKGROUND AND PROCEDURAL HISTORY………………………………………...1

ARGUMENT………………………………………………………………………………3

I.      THE COURT SHOULD ENFORCE THE SETTLEMENT ENTERED INTO BY THE PARTIES AS MEMORIALIZED BY THE LEGALLY BINDING TERM SHEET……………...4

      A.      The Term Sheet Constitutes A Binding Contract Between the Parties……………..4

      B.      *Cheeks* Does Not Prevent Enforcement of The Agreed-Upon Class Settlement………………………………………………………………………..7

II.     THE COURT SHOULD AWARD FEES AND INTEREST TO PLAINTIFFS………………7

      A.      New Legal Fees Incurred………………………………………………………..7

      B.      Interest Penalties Should Be Granted ………….……………………………….9

CONCLUSION………………………………………………………………………...10

EXHIBIT A – Term Sheet

EXHIBIT B – The Parties' Email Correspondence

EXHIBIT C – Joint Letter to Court Regarding Settlement

EXHIBIT D – Letter to Court to Withdraw as Counsel

EXHIBIT E – Letter For Extension of Time to File Proposed Settlement

EXHIBIT F – Attorney Time Sheets

# TABLE OF AUTHORITIES

**CASES**

*Atrium Cos. V. Unite Here!,* 2011 U.S. Dist. LEXIS 99442,
(S.D.N.Y. July 21, 2011)……………………………………...……………………………8

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.,* 607 F.3d 817
(Fed. Cir. 2010)…………...…………………………………………………………….…..8

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys.,* 447 F. Supp. 2d 329
(S.D.N.Y. 2006)........................................................................................................................ 4

*Brodeur v. City of N.Y.,* No. 04-CV-1859(JG), 2005 U.S. Dist. LEXIS 10865
(E.D.N.Y. May 13, 2005) ....................................................................................................... 4

*Brown v. Cara,* 420 F.3d 148 (2d Cir. 2005)................................................................... 5

*Earthlink, Inc. v. Pope,* No. 1:03-CV-2558-JOF, 2007 U.S. Dist. LEXIS 17599,
(N.D. Ga. Mar. 14, 2007)………………………… ………………………….………..………6

*Galanis v. Harmonie Club of N.Y.,* 2014 U.S. Dist. LEXIS 140591
(S.D.N.Y. Oct 2, 2014)........................................................................................... 5, 6

*Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144 (2d. Cir. 1987)………………………7

*Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178 (2017)……………………………7

*Jackson v. N.Y. City Dep't of Educ.,* 2012 U.S. Dist. LEXIS 77305
(S.D.N.Y. June 4, 2012) ......................................................................................... 6

*Meetings & Expositions, Inc. v. Tandy Corp.,* 490 F.2d 714 (2d Cir. 1974).................................. 4

*Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437 (2d Cir. 2005) ..................................... 3

*Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481 (2d Cir. 1999)......................... 4

*Singer v. Xipto Inc.,* 852 F.Supp.2d 416 (S.D.N.Y. 2012) .............................................. 6

*United States v. United States Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars,* 423 F. Supp. 2d 14 (E.D.N.Y. 2006)............................................................. 4

*Vacold LLC v. Cerami,* 545 F.3d 114 (2d Cir. 2008)……………………………………………..6

*Zuric Am, Ins. Co. v. Team Tankers A.S.,* 811 F.3d 584 (2d Cir. 2016)……………………………...8


**STATUTES**:

28 U.S.C. § 1927……………………………………………………………………….....8, 9

NY CPLR § 5004……………………………………………………………………………9

## PRELIMINARY STATEMENT

Plaintiffs, HECTOR MORA, VICTORINO GALLARDO, RAUL REYES, JOHAN GOMEZ, CONSTANTINO MAXIMO, TOMAS CUIN, RICARDO MORALES, JOSE JUAN MAYA ALVAREZ, ANGEL ORTEGA ALMONTE, ALEJANDRO GRAJALES, CIRILO OLIVIER GARCIA, DOMINGO EDUARDO GOMEZ MARTINEZ, OCTAVIO AARON LOPEZ, JOSE PEREZ, and HERSON TORRES, (collectively, the "Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Motion to Enforce the Settlement Agreed Upon by The Parties. For the reasons stated below, Plaintiffs' Motion should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

On April 19, 2018, the parties participated in a private mediation with the Mediator, Martin Scheinman, Esq. At the conclusion of the mediation, the parties entered into a settlement releasing all of Plaintiffs' wage and hour claims and Plaintiff MORA's discrimination claims, which were not alleged in the First Amended Class and Collective Action Complaint. All material terms of such settlement were memorialized in a written "Term Sheet," executed by the parties, which is attached hereto as **EXHIBIT A**[1].

The Term Sheet specifies that the "Defendants and Collective (the 'Parties') participated in a mediation with Marty Scheinman, and agreed to the following terms," including, specifically that "Defendants agree to pay to the Collective a total of $135,000 (the 'Settlement Amount') within 90 days." *Id.* The Term Sheet contemplates that Defendants NGM MANGEMENT GROUP LLC, COLUMBUS VILLAGE LLC, FIDI DISTRICT LLC, GEORGE HADJIPANAYI, and MICHAEL PITSINOS (together, the "NGM Defendants") would potentially default on payment of the Settlement Amount. *Id.* Therefore, the Term Sheet sets forth that the Corporate Defendants, defined

---

[1] The Term Sheet is to be filed *in camera* with the Court.

1

as BAREBURGER GROUP LLC, BAREBURGER INC., BARE BURGER DIO INC., EURIPIDES PELEKANOS, GEORGE RODAS, EFTYCHIOS PELEKANOS, and GEORGIOS DELLIS (together, the "Corporate Defendants"), "will guarantee the payment of the Settlement Amount. In the event of a default, the Corporate Defendant will cure within 30 calendar days." *Id*. The Term Sheet was signed by a Corporate Defendant representative, EFTYCHIOS PELEKANOS, and a NGM Defendant representative, GEORGE HADJIPANAYI. Furthermore, the Term Sheet was subject to final approval by Corporate Defendant BAREBURGER GROUP LLC, to be provided "by email from Defendants' counsel to Plaintiffs' counsel." *Id*. On April 30, 2018, Defendants' counsel confirmed the settlement, and the parties informed the Court of the parties' settlement in principle on the same day. *See* **EXHIBIT B** (Defendants' counsel's email confirming settlement) and **EXHIBIT C** (Letter informing Your Honor of the parties' settlement in principle).

The Term Sheet records, *inter alia*, all of the material terms of the contemplated settlement including:

(i)     the total settlement amount;

(ii)    the amounts to be allocated to Plaintiffs;

(iii)   the amount to be allocated as attorney's fees and costs;

(iv)    the schedule of settlement payments to be tendered; and

(v)     the scope of the release by Plaintiffs. **EXHIBIT A**.

The Term Sheet was fully executed on April 19, 2018. It was executed on behalf of the parties by Anne Seelig, Esq., counsel for Plaintiffs, and by Jeffery A. Meyer, Esq., who was at the time of the mediation, and remains now on the record, the counsel for Corporate Defendants and NGM Defendants. *Id.* The Term Sheet includes separate signature blocks for Counsel for Plaintiffs,

Counsel for Defendants, the representative of the Corporate Defendants, and the representative of the NGM Defendants. *Id.* All parties personally signed their signature blocks *Id.*

Pursuant to the Term Sheet, Defendants were drafting the settlement agreement and fairness submission. *Id*. The parties were required to submit their proposed settlement for *Cheeks* review by January 17, 2019. On January 17, 2019, Defendants' Counsel informed Plaintiffs' counsel that they were unable to obtain an executed settlement agreement and that they anticipated that they will need to file a motion to withdraw as Defendants' counsel. Defendants' Counsel informed Your Honor of the same through their status letter, dated January 17, 2019. *See* **EXHIBIT D** (Defendants' Letter to the Court). On April 19, 2019, Defendants' counsel withdrew as counsel for both the Corporate Defendants and the NGM Defendants. On May 17, 2019, Counsel for NGM Defendants filed a notice of appearance. On September 19, 2019, Counsel for Corporate Defendants filed a notice of appearance.

After counsel was retained by the Corporate Defendants and the NGM Defendants, the parties then attempted to reach a new settlement. On October 31, 2019, after a teleconference with Your Honor, the parties were again referred to mediation. On November 14, 2019, Raymond Nardo, Esq., was selected as the mediator and the mediation was scheduled for January 13, 2020. At the conclusion of the mediation, the parties could not reach a settlement.

Therefore, Plaintiffs now move to enforce the agreed-upon settlement set forth in the Term Sheet.

## <u>ARGUMENT</u>

"It is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005). Defendants remain bound by the Term Sheet, which was executed by Defendants' counsel, Jeffery A Meyer, Esq., the Corporate Defendants' representative, and the NGM

Defendants' representative, on behalf of all Defendants. Defendants are not released from their responsibility to comply with the Term Sheet, simply because they have changed their minds.

## I. THE COURT SHOULD ENFORCE THE SETTLEMENT ENTERED INTO BY THE PARTIES AS MEMORIALIZED BY THE LEGALLY BINDING TERM SHEET

"There is a public interest in promoting settlement of lawsuits…and the courts have a responsibility to promote settlements…" *United States v. United States Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars*, 423 F. Supp. 2d 14, 33 (E.D.N.Y. 2006) (internal citations and quotations marks omitted). As such, "[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). For the reasons stated below, the Court should exercise its authority to enforce the settlement entered into the parties, pursuant to the binding Term Sheet.

### A. The Term Sheet Constitutes A Binding Contract Between the Parties

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). "The fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties… on all essential terms…" *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006). In determining whether a contract exists, a court must consider the totality of the circumstances, strictly from an objective standpoint. Accordingly, where "a contract is unambiguous, a party's subjective intent is irrelevant." *Brodeur v. City of N.Y.*, No. 04-CV-1859(JG), 2005 U.S. Dist. LEXIS 10865, at *11 (E.D.N.Y. May 13, 2005). Here, the Term Sheet was signed by Defendants' counsel, the Corporate Defendants' representative, and the NGM Defendants' representative, at the conclusion of a hard-fought, full-day, private mediation, before the widely respected mediator Martin Scheinman, Esq. The settlement contemplated by the Term

Sheet was reached as a result of extensive, arms-length negotiations between the parties and their experienced wage-and-hour counsel. There is no good-faith basis for any assertion that the Term Sheet does not demonstrate the existence of a contract between the parties.

Even though the Term Sheet is a preliminary memorialization of a formal settlement to be recorded in a separate, more detailed agreement, it is still binding on all parties. Courts deciding whether to enforce settlements based on preliminary or informal agreements primarily consider "whether there has been an express reservation of the right not to be bound in the absence of a [finalized] writing." *Galanis v. Harmonie Club of N.Y.*, 2014 U.S. Dist. LEXIS 140591, at *21 (S.D.N.Y. Oct 2, 2014); *see also Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005) (whether there has been an express reservation of the right not to be bound in the absence of a writing is "frequently the most important" factor to consider for purposes of determining the enforceability of a settlement). The Term Sheet demonstrates clearly that Defendants "agree[d] to pay the Collective," and that the "Corporate Defendants will guarantee the payment of the Settlement Amount." *See* **EXHIBIT A**. The Term Sheet does indicate that the "term sheet is subject to final approval by Bareburger Group LLC, which shall be provided no later than April 23, 2018, by email from Defendants' counsel to Plaintiffs' counsel." *Id*. Subsequent to the mediation on April 19, 2018, Defendants' counsel confirmed Defendants' final approval of the agreed-upon settlement terms as set forth in the Term Sheet and the parties informed Your Honor of the settlement in principle. *See* **EXHIBITS B** and **C**. Therefore, the settlement contemplated therein is clearly enforceable. *See, e.g.*, *Galanis*., 2014 U.S. Dist. LEXIS 140591, at *25,

The enforceability of the Term Sheet is also demonstrated by the partial performance of the settlement (as shown by the joint requests informing the Court of a settlement, the email exchange confirming settlement, and Defendants' letter-motion requests to Your Honor requesting

an extension of time to file the settlement agreement for *Cheeks* review, *see e.g.,* **EXHIBITS B, C,** and **E** (Defendants' letter motion requests for extensions to file the proposed settlement for *Cheeks* review, dated June 18, 2018 and December 28, 2018)), *see, e.g.,* *Galanis*., 2014 U.S. Dist. LEXIS 140591, at \*27; *Jackson v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 77305, at \*6-7 (S.D.N.Y. June 4, 2012) (finding partial performance where "the parties began to perform on the agreement by preparing and exchanging draft settlement documents, and most significantly, communicated the settlement to the Court."), and (2) the fact that all material terms of the settlement were agreed upon recorded in the Term Sheet, *see, e.g., Vacold LLC v. Cerami*, 545 F.3d 114, 129 (2d Cir. 2008) (affirming the district court's enforcement of a settlement agreement where there was "no evidence from which [the Court] could conclude that the parties left material terms of their agreement open to further negotiation"); *Singer v. Xipto Inc*., 852 F.Supp.2d 416, 425 n.7 (S.D.N.Y. 2012) ("[T]he undecided nature of the interest [term of the parties' agreement] is only relevant [to the agreement's enforceability] if it is an 'essential' or 'material' term of the Parties' bargain.").

Finally, the Term Sheet is clearly enforceable, in view of the fact that Defendants EFTYCHIOS PELEKANOS and GEORGE HADJIPANAYI personally signed the Term Sheet, in the presence of their attorney, after participating in the April 19, 2018 mediation. See **EXHIBIT A**. Even parties without legal representation are required to comply with settlements that they personally negotiate and sign. *See Earthlink, Inc. v. Pope*, No. 1:03-CV-2558-JOF, 2007 U.S. Dist. LEXIS 17599, at \*7 (N.D. Ga. Mar. 14, 2007) (enforcing settlement against a *pro se* defendants where that defendant "placed his signature on the extensive provision of the settlement agreement set forth in a Binding Term Sheet … [and] … negotiated back and forth with Plaintiff's counsel on the language of carious documents that were being drafted to memorialize the terms of the

Binding Term Sheet."); *see also Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 149 (2d. Cir. 1987)

### B. *Cheeks* Does Not Prevent Enforcement of The Agreed-Upon Settlement

The parties' intent to obtain court approval of the settlement of FLSA claims, as required under *Cheeks* and evident in the Term Sheet and subsequently filed joint letter, have no bearing on the validity of the contract. *See* **EXHIBITS A** and **C**. Had the Court rejected the proposed FLSA settlement pursuant to *Cheeks*, the parties would have merely modified ancillary terms of the FLSA settlement agreement to comply with the Court's instructions and re-submitted the settlement documents.

That *Cheeks* approval did not occur prior to Defendants' attempt to renege on the settlement does not mean that the executed Term Sheet is not enforceable. If *Cheeks* approval were a pre-requisite for the enforcement of any FLSA settlement, parties would be free to unilaterally withdraw from FLSA settlements at any time prior to *Cheeks* approval, even in cases like this one where the both parties have executed a Term Sheet of the material settlement terms. While *Cheeks* permits *courts* to invalidate certain binding settlement agreements that do not comply with its requirements, the decision cannot possibly be construed to provide a way out for parties that change their minds regarding an agreed-upon settlement, like Defendants.

## II. THE COURT SHOULD AWARD FEES AND INTEREST TO PLAINTIFFS

### A. New Legal Fees Incurred

Federal courts possess inherent powers that include the ability to sanction a party for assessment of attorney's fees, when a party has acted in bad faith, to reimburse the legal fees and costs incurred by the other side. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Specifically, the fee award can be no more than what is required to redress the

wronged party for the losses sustained. *See Id.* Finally, a sanction is calibrated to the damages caused by the bad faith acts, or in other words, it covers the legal costs that the action incurs. *See Id.*

Furthermore, under 28 U.S.C. § 1927, a court may require any attorney "Who so multiplies the proceedings in any case unreasonably and vexatiously … to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In awarding fees under 28 U.S.C.§1927, the Second Circuit requires clear evidence that (1) challenged actions by counsel were entirely without color; and (2) they were brought in bad faith. *See Atrium Cos. V. Unite Here!,* 2011 U.S. Dist. LEXIS 99442, at *1 (S.D.N.Y. July 21, 2011). A claim is entirely without color when it lacks any legal or factual basis. *See Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.,* 607 F.3d 817, 833 (Fed. Cir. 2010). Bad faith can be found when an attorney's actions are so "completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *See Zuric Am, Ins. Co. v. Team Tankers A.S.,* 811 F.3d 584, 591 (2d Cir. 2016).

In the present case, on April 19, 2018, the parties executed the Term Sheet, creating a binding contract between the parties. Furthermore, as referenced above, the parties took multiple steps towards performance of the settlement. However, Defendants have yet to follow and execute the Term Sheet. There exists no legal or factual basis behind Defendants non-compliance with the Term Sheet that was signed and executed by both Corporate Defendants and NGM Defendants. Furthermore, steps were then taken towards partial performance of the Term Sheet, including informing the Court that the parties have reached final agreement on the terms of the settlement and were ready to file. *See* **EXHIBIT E.**

Defendants non-compliance is subsequently in bad faith as well. Defendants have provided no valid reasoning as to why the Term Sheet should not be enforced. Instead the parties have gone through another mediation session and nearly two years have passed since the execution of the Term Sheet. Despite the Corporate Defendants and NGM Defendants agreeing to and signing the Term Sheet, and then taking steps towards partial performance, Defendants have ultimately stone-walled Plaintiffs and refused to honor the executed Term Sheet. As a result, Plaintiffs have now had to incur new legal fees in the process of compelling the Defendants to honor the executed Term Sheet. It is clear that Defendants are trying to back out of the contract and delay the proceedings, revealing their actions that are clearly in bad faith. Given the clarity of the Term Sheet and the lack of any legal basis for refusing to execute the Term Sheet, an award of Plaintiffs' legal fees incurred in enforcing the Term Sheet is warranted under the District Courts inherent powers or 28 U.S.C. § 1927.

Plaintiffs have incurred $8,030.00 in new legal fees in pursuing enforcement of the Term Sheet (Representing 2.5 hours for C.K. Lee, Esq., Partner, at $800 per hour; 5 hours for Clara Lam, Esq., 5th Year Associate at $550 per hour; 8.2 hours for Tenzin Tashi, Esq., 2nd Year Associate at $400 per hour.) *See* **EXHIBIT F** (Attorney Time Sheets).

### B. Interest Penalties Should be Granted

Plaintiffs are entitled to interest penalties on the settlement sum due to Defendants failure to pay the Collective the required sum of $135,000 as indicated in the Term Sheet. Pursuant to New York Civil Practice Law & Rules ("NY CPLR") § 5004, the rate of interest on judgments shall be nine percent (9%). The Term Sheet requires Defendants pay the Collective the entire $135,000 within 90 days of execution, April 19, 2018, which would be July 18, 2018. As Defendants failed to, Plaintiffs are entitled to interest on the whole settlement amount. Therefore,

for the span of July 18, 2018 to July 18, 2019, Defendants shall owe $12,150 in interest. Furthermore, for the span of July 18, 2019 to February 24, 2020, Defendants shall owe $7,389.86 in interest.

As a result, Defendants owe a total of $19,539.86 in interest penalties.

## **CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that the Court enforce the Term Sheet, which was agreed upon by the parties, and grant Plaintiffs legal fees incurred and interest penalties on the settlement award.

Dated: New York, New York          Respectfully submitted,
       February 24, 2020

LEE LITIGATION GROUP, PLLC

By:     */s/ C.K. Lee*
        C.K. Lee, Esq.
        Lee Litigation Group, PLLC
        148 West 24th Street, 8th Floor
        New York, NY 10011
        Tel: (212) 465-1188
        Fax: (212) 465-1181

        *Attorneys for Plaintiffs, FLSA Collective*
        *Plaintiffs and the Class*