UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

HECTOR MORA*, et al., on behalf of themselves, FLSA
Collective Plaintiffs, and Class Members,*                    Civil Case No. 16-cv-4373 (RML)

                              Plaintiffs,

              -against-

BAREBURGER GROUP LLC, *et al.*,

                              Defendants.
------------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO
ENFORCE A PUTATIVE SETTLEMENT**


                         LEWIS BRISBOIS BISGAARD & SMITH LLP
                         77 Water Street, Suite 2100
                         New York, New York, 10005
                         212-232-1300
                         brian.pete@lewisbrisbois.com
                         *Attorneys for Defendants Columbus Village LLC,*
                         *NGM Management Group, LLC, George*
                         *Hadjipanayi, and Michael Pitsinos*

## PRELIMINARY STATEMENT

Defendants Columbus Village LLC, NGM Management Group, LLC, George Hadjipanayi, and Michael Pitsinos (collectively the "Franchisee Defendants"), by their attorneys Lewis Brisbois Bisgaard & Smith LLP, submit this Memorandum of Law in opposition to Plaintiffs' Motion seeking to enforce a settlement purportedly embodied by the term sheet dated April 19, 2018, executed following a mediation that took place that day (the "Term Sheet").

Plaintiffs' motion should be denied for several reasons. Most importantly, Plaintiffs' own conduct demonstrates that there is no enforceable settlement. On February 12, 2019, Plaintiffs, via their Counsel, submitted a letter to the Court and represented, in clear and unambiguous terms, that due to the mediation having been unsuccessful, the parties had not agreed upon a settlement and the litigation should proceed. A year later, following further litigation activity and a second unsuccessful mediation, Plaintiffs suddenly had a change of heart and have now taken the contrary position that the Term Sheet was an enforceable binding agreement. However, Plaintiffs' judicial admission should bar Plaintiffs from changing their earlier position, simply because it does not currently suit them.

In any event, the Term Sheet was a preliminary agreement which was not intended to and did not have binding effect. Not only was it subject to a number of conditions precedent, but it also omitted material terms, such as each Defendant's respective obligations towards the Plaintiffs and the apportionment of the settlement sum among each Plaintiff. The fact that the parties did not intend to bind themselves to the Term Sheet is further evidenced by the parties' conduct in the months that followed, and the Plaintiffs' protracted failure to take any steps to enforce the Term Sheet. Moreover, it would be impossible to enforce the Term Sheet as written because several parties who were purportedly covered by the Term Sheet are no longer parties to

this action.

Further, even if this Court found that the Term Sheet constituted a binding agreement, it would not pass master under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015); which is a condition precedent to it being enforceable.

Finally, assuming that this Court sought to enforce and approve the Term Sheet under *Cheeks*, the imposition of interest and attorney's fees requested by Plaintiffs is unwarranted.

For the foregoing reasons, and as further explained below, Plaintiffs' motion should be denied in its entirety.

## STATEMENT OF FACTS

On August 4, 2016, Plaintiffs Hector Mora, Victorino Gallardo, Adan Hernandez-Riveros, and Paul Reyes, on behalf of themselves and others similarly situated, filed this action. Docket Entry (hereinafter "DE") 1. Over the course of the next year and a half, multiple opt-in Plaintiffs were added to the case, some of whom either settled their claims with some of the Defendants or dismissed their claims without prejudice.

On April 19, 2020, Plaintiffs, including then-Plaintiff Adan Hernadnez-Riveros, and Defendants Bareburger Group LLC, Bareburger Inc, Bare Burger Dio Inc, Euripides Pelekanos, George Rodas, Eftychios Pelekanos, and Georgios Dellis (defined as the "Corporate Defendants" in the Term Sheet), and NGM Management Group LLC, Columbus Village LLC, Fidi District LLC, George Hadjipanayi and Michael Pitsinos (defined as the "MGN Defendants" in the Term Sheet"), appeared for a mediation with mediator Martin Scheinman, Esq. The attendees reached a settlement in principle, but did not resolve all of the necessary issues. Some of the basic terms of the settlement were drawn up in a one-page Term Sheet, named Memorandum of Agreement, which was executed by Jeffery A. Meyer, Esq., who was then the attorney for all Defendants,

Anne Seelig, Plaintiffs' Counsel, Eftychios Pelekanos, and George Hadjipanayi.

The purpose of the Term Sheet was to provide a summary of the main points discussed and agreed to at the mediation. Declaration of George Hadjipanayi (hereinafter "Hadjipanayi Decl.") ¶ 2. However, the Term Sheet was not intended as a binding agreement between the (then) parties; instead, the parties' intention was to memorialize their respective obligations in a separate "settlement agreement" to be drafted by Counsel for Defendants and to "be submitted for approval within 30 days" of the date of the Term Sheet. *See* Exhibit A to Plaintiffs' Memorandum of Law (hereinafter "Plaintiffs' Memo.").

The Term Sheet itself was subject to a number of conditions precedent, including Bareburger Group LLC's "final approval" of the Term Sheet to "be provided no later than April 23, 2018, by email from Defendants' counsel to Plaintiffs' Counsel" and the "receipt of a demand letter to NGM Management Group, LLC [whereby] $50,000 [would] be payable to Lee Ligation Group, PLLC [and] $10,000 [would] be payable to Hector Mora". *Id.*

It was understood that the contemplated settlement agreement would lay out in detail the parties' obligations towards each other, including the amounts (if any) to be paid by each Defendant, and the settlement amount distribution between the various (then) Plaintiffs. Hadjipanayi Decl. ¶ 3.

There is no evidence that Bareburger Group LLC provided the required final approval by April 23, 2018, or at any time thereafter. *See* Exhibit B to Plaintiffs' Memo. *See also generally* the Corporate Defendants' Memorandum of Law (DE 125-1). In addition, NGM Management Group, LLC never received a demand letter from Hector Mora, which the Term Sheet required. Hadjipanayi Decl. ¶ 5, Declaration of Michael Pitsinos (hereinafter "Pitsinos Decl.") ¶ 7.

On July 12, 2018, former Named Plaintiff Adan Hernadnez-Riveros voluntarily

4

dismissed his claims without prejudice against all Defendants. *See* DE 82. No consideration was given to him in exchange for that dismissal. Hadjipanayi Decl. ¶ 5.

Following further negotiations between the Corporate and the NGM Defendants after the first mediation, it became clear that an agreement could not be reached as to how the settlement amount would be split among the Defendants. Litigation ensured between them[1] and Jeffrey Meyer, Esq. was forced to withdraw as Counsel for Defendants, based on a conflict that arose because his clients were disagreeing with each other. DE 102. On January 17, 2019, Mr. Meyer submitted a letter to Judge Levy advising that he was "unable to obtain an executed settlement agreement from [his] clients" and he anticipated "filing a motion to withdraw as counsel within the next two weeks." DE 100.

On February 12, 2019, Plaintiffs' counsel C.K. Lee submitted a letter to this Court (the "Lee Letter") stating as follows:

> Plaintiffs write to inform the Court **that the parties shall continue to litigate the above-referenced matter since there is no settlement**.
> […]
> Plaintiffs consent to Defendants' counsel, Nixon Peabody LLP, withdrawing as counsel and respectfully request that Your Honor allow Defendants thirty (30) days to obtain new counsel. Following their appearance, Plaintiffs respectfully request two (2) weeks for the parties to meet and confer regarding a new discovery schedule. **Because mediation was unsuccessful, the parties' position should revert as if no settlement had been attempted**.

*See* DE 101 (emphasis added); Declaration of Brian Pete, Esq., Exhibit A.

Mr. Meyer withdrew as counsel and the parties continued to litigate the case via new counsel. On September 3, 2019, Plaintiffs filed a stipulation of dismissal, dismissing their claims against Bareburger, Inc. and Fidi District LLC only without prejudice. DE 113.

---

[1] The litigation captioned *El Toro Group, LLC et al v. Bareburger Group, LLC et al*, Index No. 651018/2018, is currently pending in the New York State Supreme Court, County of New York.

At no point did any Defendant make any settlement payment to any Plaintiff pursuant to the Term Sheet. In addition, Plaintiffs did not move to enforce the Term Sheet reached at the April 19, 2018 mediation. Instead, the parties continued to litigate the case as contemplated by the Lee Letter. The parties appeared for numerous telephonic conferences before Judge Levy, including on May 23, 2019 and on June 25, 2019, and set a discovery schedule contemplating party depositions. *See* DE 112 (letter submitted by Plaintiffs' Counsel setting discovery schedule).

On October 31, 2019, following a further conference with Judge Levy, the case was referred to mediation and discovery was placed on hold. *See* Minute Entry Dated 10/31/2019. Mediation took place on January 13, 2020, and was unsuccessful.

On February 24, 2020, nearly two years following the execution of the Term Sheet, and contrary to their prior representations to this Court, Plaintiffs suddenly took the position that the Term Sheet represented an enforceable agreement and moved to enforce its terms. Astonishingly, in submitting the present motion, Plaintiffs not only request that this Court enforce the Term Sheet but that it also award Plaintiffs interest and attorney's fees, as a form of sanction.

For the foregoing reasons, and as further explained below, this court should deny Plaintiffs' Motion in its entirety.

## ARGUMENT

### I. PLAINTIFFS' JUDICIAL ADMISSION PRECLUDES THEIR SEEKING TO ENFORCE THE TERM SHEET

When a party makes a judicial admission, that party "normally is bound [by that admission] throughout the course of the proceeding". *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985). A judicial admission is "conclusive in the case" and "ha[s] the

effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009). Judicial admissions may be found in pleadings, or "factual affirmations or stipulations of some sort". *Banks v. Yokemick*, 214 F. Supp. 2d 401, 405 (S.D.N.Y. 2002). "Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." *Haywood v. Bureau of Immigration*, 372 F. App'x 122, 124 (2d Cir. 2010).

Here, the Lee Letter stated in clear and unequivocal terms that "there is no settlement", and "the parties' position should revert as if no settlement had been attempted." DE 101. This was a judicial admission that binds Plaintiffs with respect to their understanding of the Term Sheet they signed. Accordingly, Plaintiffs should be precluded from arguing that "the parties' respective counsel executed the Term Sheet for the purpose of creating a binding agreement" or that "[t]he parties clearly intended to be bound by the Term Sheet", as he argues in his Declaration filed with this court. *See* DE 124 ¶¶ 7, 8. See *AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*, No. 16-cv-6033 (CM), 2016 U.S. Dist. LEXIS 153399, at *9 (S.D.N.Y. Nov. 3, 2016) ("a formal judicial admission that a party…entered into a contract is conclusive against a defendant in a motion for summary judgment, and cannot be withdrawn without court permission").

Paradoxically, Plaintiffs argue in their own brief that "Defendants are not released from their responsibility to comply with the Term Sheet, simply because they have changed their minds." Plaintiffs' Memo. of Law, p. 4. Yet, it is Plaintiffs, not Defendants, that "changed their minds". The record demonstrates that, until Plaintiffs advised that they were changing course and would be filing the present motion, the parties were all in agreement that the Term Sheet did not represent a binding settlement agreement.

## II.  THE "PARTIES" NEVER ENTERED INTO A BINDING AGREEMENT

"A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are clear and unambiguous." *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005). For a contract to be enforceable, there must be mutual assent "on all essential terms" of the contract, often referred to as a "meeting of the minds." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003). The Second Circuit Court of Appeals established a four factor test to determine whether to enforce a settlement in the absence of a formal written agreement, as follows: "(1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually  committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). However, "where there is a writing between the parties showing that one party did not intend to be bound, a court need look no further than the first factor." *Kaczmarcysk v. Dutton*, 414 Fed. App'x 354, 355 (2d Cir. 2011).

Here, application of the *Winston* factors compels the conclusion that the Term Sheet is not a binding contract.

### A.  The Term Sheet Contains Several Conditions Precedent

The Term Sheet makes clear, on its face, that it is not a stand-alone agreement, but a mere preliminary agreement, "subject to" several conditions precedent, including:

(a)  "the receipt of a demand letter to NGM Management Group LLC";

(b)  "the final approval by Bareburger Group LLC, which shall be provided no later than April 23, 2018, by email from Defendants' counsel to Plaintiffs' counsel"; and

(c) the drafting of "the settlement agreement and fairness submission" by "Counsel for Defendants".

None of these conditions precedent were satisfied. NGM Management Group LLC never received a demand letter from Plaintiffs' Counsel. Hadjipanayi Decl. ¶ 5; Pitsinos Decl. ¶ 7.

In addition, as revealed from Plaintiffs' own submissions, Bareburger Group LLC never gave final approval of the Term Sheet by April 23, 2018, via email, or thereafter. Instead, it appears that, at best, former defense counsel verbally agreed "to the contemplated settlement" via telephone call that took place on April 30, 2018. *See* Plaintiffs' Memo., Exhibit B. However, it is doubtful whether Bareburger Group LLC ever authorized such communication. *See* Declaration of Eftychios Pelekanos (DE 125) ¶¶ 1, 10, 11. Finally, there was no fairness letter drafted and obviously none of the Defendants ever executed a settlement agreement.

Because the Term Sheet was merely a "preliminary agreement" which "contemplate[d] further negotiations and the execution of a formal instrument", it did not create a binding contract. *Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005). *See also Hawkins v. MedApproach Holdings, Inc.*, No. 13-cv-05434 (ALC), 2018 U.S. Dist. LEXIS 43500, at *3 (S.D.N.Y. Mar. 15, 2018) (denying motion to enforce term sheet and holding that "subject to" is the equivalent of "condition or depending on").

It is telling that Plaintiffs have not proffered any evidence that Plaintiffs themselves believed the Term Sheet was binding. By contrast, Defendants Hadjipanayi and Pitsinos's Declarations submitted herewith demonstrate their understanding that the Term Sheet was not meant to be a binding agreement. Plaintiffs rely the Declaration of C.K. Lee, Esq., who was not present at the April 19, 2018 mediation, who was not a signatory to the Term Sheet, and who filed the Lee Letter stating that there was no deal. It is evident that the Term Sheet is not a

9

binding contract. *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) ("where the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered").

**B.  There Was No Partial Performance of Obligations Under the Term Sheet**

Though Defendants' showing that the parties did not intend to be bound by the Term Sheet should end the Court's inquiry here (*Kaczmarcysk,* 414 Fed. App'x at 355), the *Winston* factors all weigh against enforcement of the Term Sheet.

As to the second factor, there was never partial performance of any of the parties' respective obligations under the Term Sheet. *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 444 (S.D.N.Y. 2003) ("Partial performance requires some actual performance of the contract, such that the plaintiffs must have conferred something of value upon the defendants which the defendants accepted.")

No payment of any kind was ever made to any Plaintiff. Hadjipanayi Decl. ¶ 5; Pitsinos Decl. ¶ 6. Nor did any Plaintiff release any claims against any Defendant and instead they continued to litigate the case for the next two years.

Further, the Term Sheet stipulated that "[i]n the event of a default, the Corporate Defendant will cure within 30 calendar days". Yet it appears Plaintiffs never sent a notice to cure to the Corporate Defendants, nor did Corporate Defendants in fact cure any type of default. Instead, Plaintiffs sought to continue with the litigation of this action to the prejudice of Defendants who had to expend money and resources to defend the case on its merits, as described above. Defendants have been prejudiced, which should mandate a finding that Plaintiffs waived whatever rights they had to enforce the Term Sheet. *See Travelers Indem. Co. v. Northrop Grumman Corp*., 2013 U.S. Dist. LEXIS 161552, at *33 (S.D.N.Y. Oct. 31, 2013)

(noting that inaction constitutes a waiver when the other party has been prejudiced by the delay); *Sweater Bee by Banff, Ltd. v. Manhattan Indus.*, 754 F.2d 457, 463 (2d Cir. 1985) (delay in seeking to enforce arbitration contract does not constitute a waiver absent prejudice to the opposing party).

Further, Plaintiffs argue that certain submissions made to the Court by defense counsel are indicative of Defendants' "partial enforcement" of the Term Sheet. Plaintiffs' Memo. pp. 5-6. This is not so. Plaintiffs do not – because they cannot – point to any concession by Defendants that a binding settlement had been reached. To the contrary, Defendants merely advised the Court that they had "reached a settlement in principle" and were expecting to submit a separate settlement agreement for the court's review and approval. *See* Plaintiffs' Memo. of Law, Exhibit C. In fact, the parties wrote jointly to the Court, seeking an extension to file the settlement agreement "to ensure that the agreement submitted by the parties correctly resolve[d] all remaining claims in the litigation…" *Id*., Exhibit E. Accordingly, for months following the execution of the Term Sheet, the parties were still negotiating regarding the terms of the formal settlement agreement. Ultimately, the negotiations were fruitless.

Having failed "to obtain an executed settlement agreement", Mr. Meyer advised the Court of his intention to withdraw as counsel. *Id*., Exhibit D. Not only did Plaintiffs not challenge Mr. Meyer's withdrawal, they instead confirmed via the Lee Letter that "there is no settlement", and "the parties' position should revert as if no settlement had been attempted." DE 101.

Accordingly, the parties' subsequent conduct following the execution of the Term Sheet further supports the position that they were not intending to be bound by its terms.

**C.      The Term Sheet Did Not Express an Agreement as to All Material Terms**

It is hornbook law that a contract cannot come into existence unless there is mutual assent regarding all the material terms of the contract. Accordingly, "there is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005). Essential terms are "all the issues perceived to require negotiation." *Id.* at 153. *See also Carmon v. Soleh Boneh Ltd.,* 614 N.Y.S.2d 555, 556 (2d Dep't 1994) ("It is well settled that an agreement to agree, in which material terms are left for future negotiations, is unenforceable unless a methodology for determining the material terms can be found within the four corners of the agreement or the agreement refers to an objective extrinsic event, condition, or standard by which the material terms may be determined.")

Here, it is evident that the Term Sheet did not contain all the material terms of the parties' agreement but was merely "an agreement to agree" on those terms in a future date. For example, the Term Sheet did not provide the apportionment of the settlement amount between all the Plaintiffs, as well as, each defendant's obligation (if any) towards their respective share of the settlement funds. These were essential terms that would necessitate further negotiation between the parties prior to the formalizing of a settlement agreement. *See Local 977, Intern. Broth. of Teamsters v. N.L.R.B.,* 577 F.3d 70, 74 (2d Cir. 2009) (noting that payment terms are material terms of a contract).

Indeed, because these terms were not included in the Term Sheet, it is now impossible for this Court to enforce it, considering that Adam Hernadnez-Riveros, a party to the Term Sheet, has dismissed his claims against all Defendants without prejudice, while the remaining Plaintiffs dismissed their claims against former defendants Bareburger Inc. and FiDi District LLC, also

parties to the Term Sheet. While Plaintiffs casually argue that the Term Sheet "constitutes a binding contract between the parties" (Plaintiffs' Memo. p. 4), they omit to mention *who* these purported parties are. Accordingly, even if this Court were to attempt to enforce the Term Sheet, it would be left guessing what the original parties to the Term Sheet would have contemplated regarding settlement, had one or more plaintiffs dismissed their claims against one or more defendants prior to a final agreement.

Accordingly, the third *Winston* factor weighs against finding a binding contract here.

### D.  The Settlement is the Type of Contract *Required* to be Committed to Writing

The fourth and final factor in *Winston* assesses "whether the agreement at issue is the type of contract that is usually committed to writing." *Winston,* 777 F.2d at 80.

Following *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), parties may no longer enter into private settlements of FLSA claims without submitting their settlement agreements to the District Court or the Department of Labor for approval. Accordingly, not only is the agreement at issue the type of contract usually committed to writing, but since 2015, it is effectively required to be in writing so that it can be submitted for court or DOL approval.

Accordingly, the fourth factor of *Winston* also weighs against finding that the Term Sheet is a binding contract. In sum, all of the factors mandate rejection of Plaintiffs' contention.

### III. THE TERM SHEET CANNOT BE APPROVED UNDER *CHEEKS*

Plaintiffs, in their submissions, implicitly recognize that a settlement agreement compromising FLSA claims is not enforceable absent *Cheeks* approval. However, they argue that the fact "[t]hat *Cheeks* approval did not occur prior to Defendants' attempt to renege on the settlement does not mean that the executed Term Sheet is not enforceable." Plaintiffs' Memo. p. 7. Plaintiffs' argument misses the point.

The question is not whether *Cheeks* approval occurred at some point prior to the submission of Plaintiffs' motion in order to render the Term Sheet enforceable, but, rather, whether the Term Sheet, as drafted, can pass muster under *Cheeks* in order for it to *become* enforceable. *See Hernandez v. Fresh Diet Inc.*, No. 1:12-cv-4339, 2017 U.S. Dist. LEXIS 177372, at *13 (S.D.N.Y. Oct. 25, 2017) ("an agreement to settle FLSA claims does not become enforceable until it is approved by a district court or the DOL"). The answer to this question is undoubtedly no for many reasons.

First, *Cheeks* warned against "overbroad releases that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues". *Cheeks,* 796 F.3d at 206. Here, the Term Sheet provides that "Hector Mora will receive $60,000 in exchange for a general release against Defendants." Mora has never formally asserted any claims against Defendants aside from the wage and hour claims brought in this litigation; accordingly, such a broad general release runs afoul of *Cheeks*. *See also Bazile v. Asset Prot. Grp. LLC*, No. 18-CV-6820-DLI-SJB, 2019 U.S. Dist. LEXIS 207508, at *8 (E.D.N.Y. Nov. 27, 2019) (collecting cases and noting that "the presence of a general release is a basis to reject a FLSA settlement").

Second, *Cheeks* disallows provisions "that would set the fee for plaintiff's attorney at between 40 and 43.6 percent of the total settlement payment without adequate documentation to support such a fee award." *Cheeks,* 796 F.3d at 206. Here, the Term Sheet provides for an astonishing $75,000 to be payable to Lee Litigation Group, PLLC, which constitutes more than 50% of the total settlement payment. Indeed, not only does this provision contravene *Cheeks*, but it appears that the settlement apportionment was creatively engineered by Plaintiffs' Counsel to intentionally and impermissibly sidestep *Cheeks*. *See also Run Guo Zhang v. Lin Kumo Japanese*

*Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 U.S. Dist. LEXIS 115608, at *4 (S.D.N.Y. Aug. 31, 2015) (reducing award from 37% of net settlement amount to 33% because "fee in excess of one-third of the settlement amount disserves the FLSA's important interest in fairly compensating injured plaintiffs"); *Seck v. Dipna Rx, Inc.*, No. 16-cv-7262 (PKC), 2017 U.S. Dist. LEXIS 69993, at *9 (S.D.N.Y. May 8, 2017) (vacating court order dismissing FLSA action where it was later discovered that attorney's fee award amounted to 52% of the overall settlement).

Finally, the Term Sheet does not provide the settlement amount distribution among the many different Plaintiffs in this action. Without "information as to the formula or the methodology used to divide the settlement award among the…plaintiffs, the Court cannot determine whether the proposed settlement is fair and reasonable to the individual plaintiffs." *Burgos v. Ne. Logistics, Inc.*, No. 15 CV 6840 (CBA) (CLP), 2018 U.S. Dist. LEXIS 71354, at *9 (E.D.N.Y. Apr. 26, 2018) (denying approval of settlement agreement without prejudice to resubmission of the agreement with further explanation as to the methods used to calculate and distribute the award among the plaintiffs); *Davitashvili v. Beacon Van Line & Storage, Inc.*, No. 15-CV-5575 (CBA) (JO), 2016 U.S. Dist. LEXIS 68295, at *5 (E.D.N.Y. May 23, 2016) (rejecting proposed settlement agreement where the parties "failed to provide sufficient information to establish that the settlement amount represented a fair and reasonable settlement as to each plaintiff.")

Accordingly, the Term Sheet is not enforceable under *Cheeks*.

## IV. ASSUMING THAT THE TERM SHEET IS ENFORCEABLE, INTEREST AND ATTORNEYS' FEES ARE UNWARRANTED

Finally, the Court should deny Plaintiffs' Motion insofar as it seeks an award of attorney's fees and interest against Defendants.

### A.  Attorney's Fees Are Unwarranted

It is a "bedrock principle known as the American Rule [that] [e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015). With respect to the enforcement of a contract, a prevailing party may only collect attorneys' fees "if an award is authorized by agreement." *In re A.G. Ship Maint. Corp.*, 69 N.Y.2d 1, 5 (1986).

Here, it is undisputed that the Term Sheet does not contain a fee-shifting provision for enforcement purposes. Rather, Plaintiffs attempt to claim attorney's fees on another basis: they seek to sanction defendants pursuant to 28 U.S.C. § 1927 and this Court's inherent powers because they allegedly "stone-walled Plaintiffs and refused to honor the executed Term Sheet". Plaintiffs' Memo. p. 9. Thus, "the parties have gone through another mediation session and nearly two years have passed since the execution of the Term Sheet". *Id*.

Plaintiffs' argument should be given short shrift. It was they who judicially admitted that the parties would continue to litigate this matter because there was no settlement, and urged this Court to enter a discovery schedule. *See* DE 101. Plaintiffs also voluntarily agreed to participate in the subsequent mediation. Having seen that the mediation had an unfavorable outcome, Plaintiffs, through the same Counsel, astonishingly now seek to sanction Defendants for participating in litigation, discovery, and in a mediation that was expressly sought by, and consented to, by Plaintiffs.

As Plaintiffs recognize, sanctions are warranted when "an attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay". Plaintiffs' Memo. p. 8. It is abundantly clear that the

motion does not identify any conduct that remotely qualifies as a basis to award for sanctions.[2]

## B.  The CPLR is Inapplicable and Interest Should Not Be Awarded

Plaintiffs argue that they should be awarded "interest penalties on the settlement sum" at the rate of 9% accruing from July 18, 2018, pursuant to CPLR 5004. Plaintiffs' Memo.  p. 9.

However, Plaintiffs' claims arise under federal law and are brought in federal court. Accordingly, any award of interest is determined based on the federal interest rate, pursuant to 28 U.S.C. § 1961, not the New York State rate. The applicable rule in this Court as to pre-judgment interest is that "when necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages". *Kansas v. Colorado*, 533 U.S. 1, 14 (2001) (internal citations omitted).

Here, imposition of interest would be unwarranted. Plaintiffs were content to continue litigating this matter for two years, before finally changing the position and deciding to move to enforce the Term Sheet. In addition, Plaintiffs have not filed a stipulation of dismissal, dismissing their claims with prejudice against Defendants. This weighs against imposition of interest. *See also Hecht v. Tegntu Int'l Corp.*, 2004 U.S. Dist. LEXIS 17684, at *15-16 (S.D.N.Y.

---

[2] Additionally, the attorneys' fees requested are excessive. Plaintiffs claim to have incurred $8,030.00 "in pursuing enforcement of the Term Sheet", calculating C.K. Lee's rate at $800 per hour, a fifth year associate's rate at $550 per hour, and a second year's associate's rate at $400 per hour. These rates are unreasonably high, in light of authority  examining the range of reasonable attorney's fees in the Eastern District. *See Encalada v. Baybridge Enterprises Ltd.*, 612 F. App'x 54, 55 (2d Cir. 2015) (a $350 hourly fee is "the highest litigated reasonable rate" for an attorney with 14 years of experience representing a Plaintiff in an FLSA matter in the Eastern District of New York.) *See further Sacardi v. Green Field Churrascaria, Inc.*, No. 10 Civ. 5605, 2012 WL 4979195, at *1 (E.D.N.Y. Oct. 17, 2012) ("overall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants").

Aug. 27, 2004) (declining to award post-settlement interest where the parties were "unable to execute the documentation necessary to finalize the settlement", including "Stipulations of Dismissal"). Even more fundamentally, this court has not approved the Term Sheet under *Cheeks*, and therefore, it never became an enforceable agreement.

Accordingly, even if this court determines that the Term Sheet constitutes a binding agreement and approves it under *Cheeks*, it cannot apply interest retroactively.

## IV.    CONCLUSION

For all the reasons set forth above, Plaintiffs' motion seeking to enforce the terms of the Term Sheet should be denied in its entirety.

Date:   New York, New York
        March 16, 2020


                        **LEWIS BRISBOIS BISGAARD & SMITH LLP**
                        ____/s/ Brian Pete_____
                        Brian Pete, Esq.
                        *Attorneys for Defendants Defendants Columbus Village*
                        *LLC, NGM Management Group, LLC, George*
                        *Hadjipanayi, and Michael Pitsinos*
                        77 Water Street, Suite 2100
                        New York, New York 10005
                        212-232-1300
                        brian.pete@lewisbrisbois.com